IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| **RICHARD R. RULE and PEGGY RULE,** | : | |
| | : | |
| Plaintiff, | : | CASE NO. |
| v. | : | 3:11-CV-146 (CAR) |
| | : | |
| **CHASE HOME FINANCE LLC,** | : | |
| | : | |
| Defendant. | : | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Currently before the Court is Defendant Chase Home Finance LLC's ("Chase") Motion to Dismiss [Doc. 3] Plaintiffs' Complaint for failure to state a claim upon which relief may be granted. Plaintiffs have filed a timely response to the Motion. Having considered the matter and relevant case law, the Court finds Plaintiffs' Complaint does state a claim upon which relief may be granted, and thus Defendant's Motion to Dismiss [Doc. 3] must be **DENIED.**

BACKGROUND

This case arises out of the foreclosure of Plaintiffs' home. Plaintiff Richard Rule[1] originally filed suit against Chase in the Superior Court of Walton County, Georgia, for wrongful foreclosure and incidental damages for mental pain and aggravation. Chase

---

[1] Because Plaintiff Peggy Rule is deceased, the Court refers to Plaintiff Richard Rule in the singular.

1

then removed the case to this Court pursuant to the Court's diversity jurisdiction. The facts as alleged in the Complaint are as follows:

On April 22, 2003, Plaintiffs Richard Rule and his wife, Peggy, who is now deceased, purchased a six bedroom house situated on 5.85 acres, located at 709 Pilot Woods Road, Jersey, Georgia. Defendant Chase, by assignment of a security deed in the amount of $255,300.00, was the servicer of Plaintiffs' mortgage loan ("Home Loan"). The Home Loan note called for monthly payments of $1,806.00. Plaintiff also owned a 2.85 acre land lot adjacent to his home ("Land Lot"). Plaintiffs operated their home and the Land Lot as a family-farmhouse.

On July 31, 2008, Plaintiff executed a promissory note and security deed, granting Athens First Bank & Trust ("AFB&T) a security interest in the Land Lot for a business loan of $142,586.10 ("Land Lot Loan").

On January 6, 2009, Plaintiff Richard Rule filed a Chapter 7 bankruptcy in the Bankruptcy Court for the Middle District of Georgia. In addition, in 2009, he sought a mortgage modification of his Home Loan because of his inability to pay the full amount of his $1,806.00 monthly mortgage payments due to the loss of business income from his trucking company, a loss in sales revenue, a poor economy during 2007 and 2008, and the loss of his spouse's income, who was killed in a farming accident in 2008 on their property outside their home. Accordingly, Plaintiff submitted a loan modification

application to Defendant Chase for a reduction of his Home Loan monthly mortgage and requested to participate in the federal government's Homeowners Affordable Modification Program ("HAMP").

HAMP arose out of the Emergency Economic Stabilization Act of 2008, and is administered by Fannie Mae, as agent of the Department of Treasury.  The program required all mortgage servicers such as Chase to execute a Servicer Participation Agreement ("SPA") by which the servicers agree to review loans for modifications under the same requirements.  Chase executed a SPA and was a participant in the HAMP program.  When a homeowner's loan is being considered for a HAMP modification, there is typically a three‐month "trial period" in which the borrowers make temporary modified payments on their loans, and submit supportive financial information to qualify for a HAMP permanent loan modification.  Borrowers are typically given a Trial Period Plan ("TPP") document to complete in conjunction with the first step to applying for a HAMP permanent loan modification.

On July 27, 2009, Plaintiff received his TPP documents from Chase and was advised by a Chase representative to submit his first TPP temporary modified payment of $1,240.00 no later than August 26, 2009.  On August 8, 2009, Plaintiff submitted his first Trial Period payment of $1,240.00.

However, on August 27, 2009, Plaintiff was told by a neighbor that his home was up for foreclosure. Plaintiff immediately made several calls to Chase in an attempt to determine the status of his HAMP request for a loan modification. After maneuvering through several telephone prompts, he finally reached a loan modification employee who represented to Plaintiff that his home was not scheduled for foreclosure sale and that he was still being considered for a HAMP loan modification.

Despite these representations, Chase foreclosed on Plaintiff's home on September 1, 2009, without providing Plaintiff with formal statutory notice of the sale. AFB&T purchased Plaintiff's home for $255,300.00 (the amount of the mortgage balance). AFB&T held a second priority lien on the property.

During the months after the September 1, 2009 foreclosure sale, Plaintiff had telephone conversations with Chase representatives located in Phoenix, Arizona. The Chase representatives made a number of representations to Plaintiff, including the following: (1) that Chase had informed AFB&T of Plaintiff's pending HAMP loan modification efforts; (2) that Chase would rescind the foreclosure sale of Plaintiff's home by re-purchasing it from AFB&T; (3) that a Chase loss mitigation loan processor had not followed through with taking Plaintiff's home off the Chase foreclosure list; and (4) that AFB&T had refused to sell the home back to Chase at the foreclosure sale

4

price in order to rescind the foreclosure sale of the home; and (5) the Chase had rejected a counter-offer by AFB&T to sell the home back, as too high.

In a letter dated October 20, 2009, the attorneys for AFB&T advised Plaintiff that they represented the owners of the residence, and if Plaintiff did not voluntarily "surrender the premises" they would initiate dispossessory proceedings to evict Plaintiff.

On December 2, 2009, Plaintiff received a letter from Chase's Reconveyance Department, dated November 20, 2009, indicating that Chase had "received funds to pay off" his mortgage. However, from December 2, 2009, through December 11, 2009, Plaintiff made several telephone calls to a Chase representative in its Loss Mitigation Department in Phoenix, Arizona, who continued to represent to the plaintiff that her computer records indicated Plaintiff's home had not been the subject of a foreclosed sale.

On January 28, 2010, Plaintiff was evicted from his home, pursuant to a Walton County Superior Court dispossessory order. In May, AFB&T sold Plaintiff's home for approximately $99,700.00 more than AFB&T paid for it at the foreclosure sale. In a letter dated May 22, 2010, Chase informed Plaintiff his HAMP trial period plan offer had expired. On September 2, 2010, Plaintiff was notified that the Land Lot would be foreclosed on the first Tuesday in October.

Plaintiff filed this suit against Chase asserting that Chase wrongfully foreclosed on his home by failing to give proper statutory notice of the foreclosure sale and by failing to exercise fairly the power of sale by selling the home at a grossly inadequate price. Moreover Plaintiff asserts that he is entitled for incidental damages for mental pain and suffering. Chase filed the current Motion seeking to dismiss Plaintiff's claims.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims. Bell Atlantic Corp., 550 U.S. at 556.

## DISCUSSION

Chase argues that Plaintiff's claims must be dismissed for a variety of reasons, all of which are addressed below.

**1. Standing**

   **a. Bankruptcy**

Chase first argues Plaintiff's Complaint must be dismissed because Plaintiff lacks standing to assert his claims due to his bankruptcy. Specifically, Chase argues Plaintiff's wrongful foreclosure claims should have been asserted in his bankruptcy case, and thus, Plaintiff lacks standing to assert them now. The Court, however, finds Plaintiff has standing to assert his claims in this Court.

To determine whether Plaintiff has standing to assert his wrongful foreclosure claims in this Court, the Court must decide whether the claims are property of Plaintiff's estate. The commencement of a bankruptcy case creates an estate, which is comprised of "all legal or equitable interests of the debtor in property. . . ." 11 U.S.C. § 541(a)(1). Unlike a Chapter 13 or a Chapter 11 bankruptcy where a debtor's tort claim acquired *during* the bankruptcy proceeding is considered after-acquired property that is part of the estate, the same is not true of a Chapter 7 bankruptcy case. See Wolfork v. Tackett, 241 Ga. App. 633, 633-34 (1999) (citing In re Rivera, 186 B.R. 505, 507 (D. Kan. 1995); In re Brown, 159 B.R. 1014, 1018 (Bankr. S. D. Ga. 1993); In re Borbroff, 766 F.2d

797, 803 (3rd Cir. 1985); and In re Fleet, 53 B.R. 833, 838 (Bankr. E.D. Pa. 1985)). In the Chapter 7 context, the bankruptcy estate includes only those lawsuits or causes of action that accrued to the debtor *prior to* the petition date.  See, e.g., Matter of Wischan, 77 F.3d 875, 877 (5th Cir. 1996).

Here, Plaintiff filed a Chapter 7 bankruptcy petition on January 6, 2009.  Almost eight months later, on September 1, 2009, Chase foreclosed on his home, and then five months after that, on February 3, 2010, Plaintiff received a discharge of all of his debts. Thus, Plaintiff's wrongful foreclosure claims arose *during* his pending Chapter 7 bankruptcy and therefore are not part of Chapter 7 bankruptcy estate.  The Court finds the authorities cited by Defendant unpersuasive, as the cases either apply to tort claims arising in Chapter 11 or Chapter 13 bankruptcies or tort claims arising *prior to* the filing of a Chapter 7 bankruptcy.  Thus, Plaintiff appears to have standing to assert his claims in this Court.

    b. **HAMP**

Chase next argues that Plaintiff lacks standing to assert any claim for wrongful foreclosure based upon any purported HAMP violation.  Defendant points out that Plaintiff is at most an incidental beneficiary of the HAMP program and thus has no independent standing to assert any claims thereunder.  See, e.g., Warren v. Bank of Am., Case no. 4:11-CV-70, 2011 WL 2116407 (S.D. Ga. May 24, 2011) (holding HAMP

8

does not disclose clear intent to make all mortgagors intended beneficiaries). Plaintiff responds that he does not contend the HAMP program bestowed upon him the status of a third party beneficiary. Instead, Plaintiff states that the Trial Payment Plan Agreement was not a loan agreement, but rather it was a promise to *provide* Plaintiffs with a loan agreement at a specified date if Plaintiffs complied with the necessary conditions, and Plaintiff relied on that promise to his detriment.

Plaintiff, however, raises this promissory estoppel claim for the first time in his Response; nowhere does Plaintiff assert in his Complaint that he entitled to relief under HAMP on the basis of promissory estoppel. Plaintiff may not supplant allegations made in his Complaint with new allegations raised in a response to a motion to dismiss. See, e.g., Irwin v. Miami-Dade County Public Schools, Case No. 06-230290-CIV, 2009 WL 465038, *2 (S.D. Fla., Feb. 24, 2009) (citations omitted); Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1330 (11th Cir. 2006) (holding court is limited to "reviewing what is within the four corners of the complaint on a motion to dismiss."). Plaintiff is not proceeding *pro se*, and therefore this Court is under no obligation to construe these additional allegations as a motion to amend the Complaint. See Newsome v. Chatham County Detention Ctr., 256 Fed. App'x 342, 344 (11th Cir. 2007) (when *pro se* plaintiffs raise additional allegations in their filings, these allegations should be construed as a motion to amend the complaint, and the motions should be granted). Plaintiff must

move this Court for permission to amend his Complaint to include these promissory estoppel claims.

### 2. Wrongful Foreclosure

Defendant also argues that Plaintiff cannot sustain a claim for wrongful foreclosure. Plaintiff claims Chase wrongfully foreclosed on his home because Chase failed to provide him with the proper statutory notice of the foreclosure sale and sold his property for less than the true or fair market value. In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to him by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury he sustained, and damages. <u>Gregorakos v. Wells Fargo Nat'l Ass'n</u>, 285 Ga. App. 744, 747 (2007) (citation omitted).

#### a. Failure to Notify

Plaintiff first asserts that Chase wrongfully foreclosed on his home because it failed to give him the required statutory notice of the foreclosure sale. The notice requirements for a non-judicial foreclosure are set forth in O.C.G.A. § 44-14-162.2 which provides:

> (a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all

>    terms of the mortgage with the debtor, and **shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested**, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.  The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm.  Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument.
>
> (b) The notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the notice of sale to be submitted to the publisher.

(emphasis supplied).  A bank's failure to provide proper notice is a breach of the duty to fairly exercise the power of sale and may support a claim for wrongful foreclosure.  See Calhoun First Nat'l Bank v. dickens, 264 Ga. 285, 286 (1994) ("The bank's failure to provide proper notice constituted a breach of the duty to fairly exercise the power of sale created by § 23-2-114.").

Chase argues that it gave Plaintiff proper notice of the foreclosure sale, and Chase has provided this Court with a copy of the notice of foreclosure letter it claims it sent to Plaintiff.  The Court notes that it can consider the notice letter because the letter is central to Plaintiff's Complaint, and this Court has no reason to doubt its authenticity.  See, e.g., Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (finding court may consider documents outside of pleadings when ruling on motion to

11

dismiss if those documents are "central to the plaintiff's claim," and court has no reason to doubt their authenticity).

Having reviewed the notice letter, this Court cannot find that it meets all of the statutory requirements. The notice fails to indicate whether it was sent by registered or certified mail or statutory overnight delivery, and thus this Court cannot dismiss Plaintiff's wrongful foreclosure claim on this basis. Chase correctly points out that under Georgia law, actual receipt of the notice of sale is immaterial because the notice is deemed given at the time it is sent. See McCollum v. Pope, 261 Ga. 835, 835 (1992). However, "whether plaintiff actually received the notice of foreclosure is immaterial *if the requirements of the statute have been met.*" Campbell v. Bank of America, Case No. 1:10-cv-3657, 2012 WL 879222, *4 (N.D. Ga. March 12, 2012) (emphasis added). Here, because the notice letter does not indicate the manner of delivery, this Court cannot find the requirements of O.C.G.A. § 44-14-162.2 have been met. Thus, Plaintiff's wrongful foreclosure claim based on failure to receive notice of the foreclosure sale may proceed.

    b. "Chilled" Sale

Plaintiff also asserts that the sale of his home was wrongful because Chase failed in good faith to exercise fairly the power of sale in violation of O.C.G.A. § 23-2-114, which provides that "[p]owers of sale in deeds of trusts, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." Specifically,

Plaintiff claims that the "sale price of the Plaintiff's home to AFB&T was grossly inadequate. . ." and that "the bidding on the Plaintiff's home was chilled," as evidenced by the fact that eight months after AFB&T bought the home out of foreclosure, it sold the home for almost $100,000 more, a price Plaintiff contends was more representative of its true fair market value.

Under Georgia law, inadequacy of price paid upon the sale of property under power, standing alone, is not a sufficient reason to find that the sale was not conducted in good faith. See Kennedy v. Gwinnett Commercial Bank, 155 Ga. App. 327, 330 (1980). "It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity." Id. (citing Giordano v. Stubbs, 228 Ga. App. 75, 79 (1971)); see also Aikens v. Wagner, 231 Ga. App. 178, 180 (1998).

Despite Chase's arguments otherwise, the Court finds Plaintiff's allegations are sufficient to state a wrongful foreclosure claim based on the theory that the sale was not conducted in good faith. Plaintiff alleges that the sale price was grossly inadequate, and he alleges that Chase mistakenly conducted the sale. Chase correctly points out that under Georgia law "[i]f the sale is conducted according to the terms of the power and in

good faith, [then] the foreclosing party has satisfied his duties and obligations to the debtor pretermitting the alleged inadequacy of price." Kennedy, 155 Ga. App at 331. However, "[i]n determining whether this duty under a power of sale has been breached, the focus is on the manner in which the sale was conducted and not solely on the result of the sale." Id.  Thus, making such a determination necessarily requires this Court to consider evidence outside the pleadings, and the Court finds it inappropriate to decide on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. 3] is hereby **DENIED**.  The Stay of Discovery is LIFTED, and the parties are DIRECTED to submit a proposed scheduling and discovery order within fourteen (14) days of the date of this Order, in accordance with the Court's Rules 16/26 Order [Doc. 7].

SO ORDERED, this 18th day of May, 2012.

S/  C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

SSH